IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JOSE LUIS ESPINOZA,
     Movant,

v.

UNITED STATES OF AMERICA,
     Respondent.

No. 5:25-CV-00265-H
   (5:24-CR-018-H-BQ-1)

**RESPONSE TO MOTION UNDER 28 U.S.C. § 2255**

Respectfully submitted,

Ryan Raybould
United States Attorney

*s/ Lauren C. Murphree*
Lauren C. Murphree
Assistant United States Attorney
Texas Bar No. 24085059
1200 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: (806) 472-7322
Lauren.murphree@usdoj.gov

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................iii

RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 ........................................ 1

STATEMENT OF THE CASE ............................................................................ 1

STATEMENT OF THE ISSUES ......................................................................... 1

STATEMENT OF FACTS.................................................................................. 2

    1.    Espinoza uses Snapchat to persuade 13-year-old "Maddi" to meet for sex.. 2

    2.    A jury rejects Espinoza's entrapment defense and convicts him of attempted enticement of a minor. ................................................................ 5

    3.    The Court sentences Espinoza to 120 months in prison and denies his post-conviction motion for acquittal. ................................................................. 6

ARGUMENT AND AUTHORITIES ................................................................... 7

    1.    Espinoza fails to show ineffective assistance in any of his claims regarding the brightness settings on his phone.  (Grounds One through Three)........... 9

    2.    Espinoza fails to show ineffective assistance in trial counsel's failure to object to the government's closing argument (Ground Four)..................... 15

    3.    Espinoza's freestanding actual innocence claim is not cognizable.  (Ground Five)................................................................................................... 17

    4.    Espinoza fails to show ineffective assistance of counsel on appeal.  (Ground Six) .................................................................................................... 17

CONCLUSION ................................................................................................. 19

CERTIFICATE OF SERVICE.......................................................................... 20

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                        **Page(s)**

*Anderson v. United States*, 2024 WL 1776378 (N.D. Tex. Apr. 23, 2024) ...................... 17

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ............................................................. 8

*Freeney v. United States*, 2023 WL 4214935 (N.D. Tex. May 4, 2023) ......................... 17

*Harrington v. Richter*, 562 U.S. 86 (2011).................................................................. 8, 10

*In re Raby*, 925 F.3d 749 (5th Cir. 2019) ................................................................. 17

*Johnson v. Dretke*, 394 F.3d 332 (5th Cir. 2004)................................................. 10

*Massaro v. United States*, 538 U.S. 500 (2003) ..................................................... 7

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000)................................................... 8

*Moore v. Vannoy*, 968 F.3d 482 (5th Cir. 2020) ................................................... 18

*Padilla v. Kentucky*, 559 U.S. 356 (2010)............................................................. 9

*Ross v. Estelle*, 694 F.2d 1008 (5th Cir. 1983).................................................... 12

*Smith v. Robbins*, 528 U.S. 259 (2000) ................................................................. 18

*Strickland v. Washington*, 466 U.S. 668 (1984)............................................. 8, 10

*Trottie v. Stephens*, 720 F.3d 231 (5th Cir. 2013) ........................................... 10

*United States v. Cantu-Cantu*, 157 F.3d 903, 1998 WL 611736 (5th Cir. Aug. 24, 1998) .................................................................................................................. 11

*United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998) ............................ 17

*United States v. Espinoza*, 2025 WL 1905334 (5th Cir. July 10, 2025) ................. 1, 14, 18

*United States v. Fields*, 761 F.3d 443 (5th Cir. 2014)...................................... 17

*United States v. Frady*, 456 U.S. 152 (1982) ..................................................... 7

*United States v. Green*, 882 F.2d 999 (5th Cir. 1989)..................................... 10

*United States v. Hughes*, 635 F.2d 449 (5th Cir. Unit B Jan. 1981) ................ 9

*United States v. Murra*, 879 F.3d 669 (5th Cir. 2018) ..................................... 16

**Federal Cases, continued**                                                        **Page(s)**

*United States v. Placente*, 81 F.3d 555 (5th Cir. 1996)..........................................................7

*United States v. Reed*, 719 F.3d 369 (5th Cir. 2013)............................................................9

*United States v. Reinhart*, 357 F.3d 521 (5th Cir. 2004)....................................................18

*United States v. Rodden*, 2013 WL 2933046 (N.D. Tex. June 12, 2013) .........................19

*United States v. Stewart*, 207 F.3d 750 (5th Cir. 2000) .....................................................9

*United States v. Stracener*, 959 F.2d 31 (5th Cir. 1992) ...................................................12

*United States v. Winters*, 530 F. App'x 390 (5th Cir. 2013) ..............................................16

*Walker v. United States*, 433 F.2d 306 (5th Cir. 1970) ......................................................16

*Youngblood v. Maggio*, 696 F.2d 407 (5th Cir. 1983) ........................................................18


**Federal Statutes and Rules**

Rule 8 of the Rules Governing Section 2255 Proceedings ...................................................9

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Jose Luis Espinoza seeks to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel at trial and on appeal and that he is actually innocent. (CV No. 1.)[1] Espinoza's claims are meritless, easily refuted by the record, and should be summarily denied as explained below.

## STATEMENT OF THE CASE

A jury convicted Espinoza of one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b), (CR Nos. 5, 104), and this Court sentenced him to 120 months in prison, (CR No. 104 at 2).

The Fifth Circuit affirmed this Court's judgment on July 10, 2025. *See United States v. Espinoza*, No. 24-10940, 2025 WL 1905334 (5th Cir. July 10, 2025) (unpublished). On December 2, 2025, Espinoza timely filed a motion to vacate under 28 U.S.C. § 2255. (CV No. 1.)

## STATEMENT OF THE ISSUES

In his Section 2255 motion, Espinoza alleges that he received ineffective assistance of counsel at trial because his trial counsel purportedly failed to:

(1) investigate the brightness settings and manipulation capabilities on his cell phone, (CV No. 1 at 9);

(2) present Espinoza's actual cell phone at trial to demonstrate the brightness settings to the jury, (CV No. 1 at 9-10);

---

[1] "CV No. __" refers to the docket number of this Section 2255 action. "CR No. __" refers to the docket number of the underlying criminal proceeding, *United States v. Espinoza*, 5:24-CR-018-H-BQ-1 (N.D. Tex.). "PSR" refers to the presentence report, which is docketed at CR No. 89-1.

1

(3) pre-admit a brightened version of Government Exhibit 20 before attempting to use it at trial, (CV No. 1 at 10-13); and

(4) object when the government superimposed the words "guilty" over a photograph of him in closing argument, (CV No. 1 at 13).

Espinoza also claims that he is actually innocent, and that he received ineffective assistance of counsel on appeal because his appellate attorney did not consult with him regarding his appeal and "cobbled together" an incomplete appeal.  (CV No. 1 at 13.)

## STATEMENT OF THE FACTS

**1.      Espinoza uses Snapchat to persuade 13-year-old "Maddi" to meet for sex.**

In early February 2024, Snyder Police Department Officer Natalya Rackley created a fictitious online persona to identify potential sexual predators of minors.  (CR No. 93 at 123, 125.)  Officer Rackley first created a profile on the social-media app "MeetMe" that identified her as a 56-year-old female located in Snyder, Texas, and included a blurry photograph of her face.  (CR No. 93 at 125; GX 10.)  Because the MeetMe app does not allow minors on the platform, Officer Rackley did not identify as a 13-year-old female at the outset.  (CR No. 93 at 123.)

Espinoza messaged the seemingly adult profile and requested to see a full-body photo.  (CR No. 93 at 133.)  He also questioned whether "Maddi" had taken the picture while seated on the toilet because he "thought it was hot picturing [her] with [her] panties down."  (CR No. 93 at 133; GX 3 at 1.)  Officer Rackley asked to move the discussion to Snapchat to share photographs.  (CR No. 93 at 128, 133; GX 3 at 1.)  Espinoza persisted in his requests for pictures, and Officer Rackley gave Espinoza her Snapchat username.

(CR No. 93 at 134-35; GX 3 at 3.)  Espinoza messaged Officer Rackley on Snapchat, and Officer Rackley sent a photo of herself, age-regressed to a teenager.  (CR No. 93 at 136; GX 3 at 5.)

Espinoza's first response to the age-regressed photo was "Wtf…it says you're 58," followed quickly by "[y]ou're a horny lil bitch aren't you."  (CR No. 93 at 137; GX 3 at 5-6.)  Officer Rackley then responded that she was "almost 14."  (CR No. 93 at 137; GX 3 at 6.)  Following a three-and-one-half-hour break in conversation, Espinoza messaged Officer Rackley again on Snapchat and asked if she was "posing as an old lady or a kid." (CR No. 93 at 137; GX 3 at 7.)  Officer Rackley reiterated that she was "Maddi, student" and stated that she was a student at Snyder High School, but, later in the conversation, she said she was in the eighth grade and attended a junior high school.  (CR No. 93 at 138-39; GX 3 at 12, 31-32.)  Even so, Espinoza continued to converse with "Maddi" and, after discussing boys her age, stated "[y]ou really are a kid, aren't you," and he asked whether her parents paid attention to her.  (CR No. 93 at 139-40; GX 3 at 13, 16.)

Espinoza continued to engage in conversation with "Maddi" and told her "guys get locked up for talking to girls like you.  You're what they call jailbait pussy."  (CR No. 93 at 144; GX 3 at 25.)  "Maddi" again told Espinoza she was "almost 14 u know 8 grade." (CR No. 93 at 145; GX 3 at 32.)  Espinoza responded: "I've always wondered about girls your age."  (CR No. 93 at 146; GX 3 at 32.)  Espinoza then turned the conversation toward sexual topics, asking "Maddi" if girls her age were horny, if she was a virgin, and for another photo.  (CR No. 93 at 146-47; GX 3 at 32-33, 37.)  Officer Rackley sent Espinoza two additional age-regressed photos, and Espinoza stated "[s]upposedly it's

wrong but I've always wanted a young girl . . . and here you are."  (CR No. 93 at 150; GX 3 at 44.)  Espinoza questioned whether "Maddi" had gone through puberty yet, if she had a "nice ass," and "how big did [her] tits grow."  (CR No. 93 at 150; GX 3 at 43, 45.)  Eventually, Espinoza told "Maddi" that he wanted to "fuck [her]" and "would destroy [her] lil pussy."  (CR No. 93 at 152, 154; GX 3 at 50, 56.)

After asking "Maddi" if she was interested in starting a family, and that "personally, [he's] been wanting to find a young bitch to breed and start a family, a big family," (CR No. 93 at 156; GX 3 at 64), Espinoza began making plans to meet with "Maddi" to have sex, and he discussed various sex acts he wanted to perform with her.  (CR No. 93 at 153-55; GX 3 at 54, 58-59.)  In response to Officer Rackley's request for a photo of Espinoza, he responded that it was "[s]cary," and that he was "[t]aking precautions," "cuz [he's] like way older" and "it's illegal."  (CR No. 93 at 163; GX 3 at 87.)

Espinoza continued to chat with "Maddi" over the following two days, and it was Espinoza that reinitiated the conversation both days.  (CR No. 93 at 167; GX 6 at 1; GX 9 at 1.)  Each time, he brought up sexual topics, described the sex acts he wanted to do with "Maddi," and discussed his plans to go meet her in Snyder.  (CR No. 93 at 168-69, 172; GX 6 at 3-7; GX 9 at 6-12.)  Espinoza told "Maddi" that he was "excited for some 8th grade pussy!  Is that bad?"  (CR No. 93 at 170; GX 6 at 8.)

Espinoza and "Maddi" decided to meet at a park near where Officer Rackley told Espinoza that "Maddi" lived with her aunt.  (CR No. 93 at 180-83; GX 6 at 46.)  "Maddi" asked Espinoza to bring condoms and skittles, and Espinoza agreed.  (CR No. 93 at 184,

186-87, 202; GX 6 at 61, 68.)  Espinoza told "Maddi" that he would also bring a towel because her "pussy prolly gonna bleed" and sent her a picture of a pink polka-dotted towel.  (CR No. 93 at 201-02; GX 9 at 15-18.)  Espinoza confirmed with "Maddi" multiple times that she could not tell anyone about them or what they planned to do.  (CR No. 93 at 179-80; GX 6 at 40-42.)

Shortly before their designated meeting time, "Maddi" indicated that she was "scared" and that she was unsure if she wanted to go through with the plan.  (CR No. 93 at 211; GX 9 at 52.)  When Espinoza was late to the meeting place, "Maddi" told him she was going to leave.  (CR No. 93 at 214; GX 9 at 58.)  Espinoza told her to hold on and that he was almost there.  (CR No. 93 at 216; GX 9 at 63, 65.)

When Espinoza arrived at the park, law enforcement immediately arrested him. Officers located the skittles, condom, and pink polka-dotted towel Espinoza had promised "Maddi" he would bring with him.  (CR No. 94 at 101-04.)  Officers also seized Espinoza's cell phone when he was arrested, (CR No. 94 at 69-70), and recovered some of the messages he sent to Officer Rackley, (CR No. 94 at 71-72).

**2.      A jury rejects Espinoza's entrapment defense and convicts him of attempted enticement of a minor.**

A federal grand jury indicted Espinoza for attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b).  (CR No. 5.)  Espinoza proceeded to trial, where his defense centered on convincing the jury that Officer Rackley did not follow proper procedures in conducting the online sting and, as a result, improperly entrapped Espinoza.  (*See* CR No. 93 at 112-15.)   Specifically, Espinoza argued that he was

induced into committing the offense because he was on a legal dating application (MeetMe) when he engaged with a user profile that had a posted age of 56 years old, and a photograph of an adult woman.  (CR No. 94 at 205-06.)  Espinoza argued at trial that, outside of his chat with "Maddi," there was no evidence that he was predisposed to commit the charged crime.  (CR No. 94 at 206.)  The jury returned a guilty verdict in less than 45 minutes.  (CR Nos. 83, 94 at 242, 247.)

**3.      This Court sentences Espinoza to 120 months in prison and denies his post-conviction motion for acquittal.**

Approximately two weeks after the verdict, Espinoza filed a motion for a judgment of acquittal.  (CR No. 86.)  Based on his interpretation of the evidence, Espinoza persisted in his argument that the government induced him to commit the offense, asserted that "this is a case of entrapment as a matter of law," and asked this Court to set aside the jury's verdict and enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c)(2).  (CR No. 86 at 5.)  Before sentencing, this Court denied Espinoza's motion by written order.  (CR No. 100.)  The Court noted that Espinoza's arguments "cannot change the overwhelming evidence that he was predisposed to commit the offense and that the government did not induce him to act," and the Court emphasized that, "[m]ost notably, the jury heard evidence that, soon after the initial encounter, the officer represented that she was 13 years old, yet Espinoza aggressively pursued a sexual encounter with her and even admitted that he had 'always wanted a young girl.'"  (CR No. 100 at 1.)

6

The Court determined that Espinoza faced a sentencing range of 97 to 121 months in prison.  (PSR ¶ 97.)  It reached that conclusion after applying a two-level enhancement under USSG § 2G1.3(b)(3)(A), because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in prohibited sexual conduct, (PSR ¶ 41), and denying a reduction for acceptance of responsibility under USSG § 3E1.1,  (PSR ¶ 47).  This Court sentenced Espinoza to 120 months.  (CR No. 104 at 2.)

## ARGUMENT AND AUTHORITIES

### Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence if it was imposed in violation of the Constitution or the laws of the United States.  Section 2255 provides four grounds for relief:  "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'"  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).  The Court is entitled to presume that a defendant who has been convicted and has exhausted his right to appeal "stands fairly and finally convicted."  *United States v. Frady*, 456 U.S. 152, 164 (1982).  A Section 2255 motion, however, "may not do service for an appeal."  *Id.* at 165.

Ineffective-assistance-of-counsel claims are constitutional claims recognized under Section 2255.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Such claims

7

require the prisoner to prove that his attorney's performance was constitutionally deficient and that he suffered actual prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court has repeatedly "made clear that the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation" but only to "ensure that criminal defendants receive a fair trial." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotations and citations omitted). Accordingly, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (emphasis in original). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

To prove prejudice, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This showing "requires a 'substantial,' not just 'conceivable' likelihood of a different result." *Cullen*, 563 U.S. at 189 (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

Simply making "conclusory allegations" of deficient performance and prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.

2000).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  An ineffective assistance claim fails if the prisoner does not satisfy either the deficient-performance or the prejudice prongs.  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).  This Court need not address both components if there is an insufficient showing on one.  *Id.*

Further, Section 2255 motions do not automatically require a hearing.  *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings.  "When the files and records of a case make manifest the lack of merit of a section 2255 claim, the trial court is not required to hold an evidentiary hearing."  *Hughes*, 635 F.2d at 451.  A prisoner is not entitled to an evidentiary hearing on his Section 2255 motion unless he "presents independent indicia of the likely merit of his allegations."  *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013).

### Discussion

**1.     Espinoza fails to show ineffective assistance in any of his claims regarding the brightness settings on his phone.  (Grounds One through Three)**

Espinoza is wrong that his trial counsel was ineffective for failing to take various actions regarding the brightness settings on his cell phone that—he claims—proved he knew that Officer Rackley was an adult.  (CV No. 1 at 9-13.)  First, Espinoza alleges that trial counsel was ineffective for failing to investigate the brightness settings and image brightness manipulation capabilities on his phone (Ground One).  Second, Espinoza claims that trial counsel was ineffective for failing to admit Espinoza's actual phone in

9

evidence and demonstrating the brightness settings to the jury (Ground Two).  Third,

Espinoza argues that trial counsel was ineffective for attempting to enter a brightened

photograph of Officer Rackley in evidence without preadmitting the manipulated

photograph (Ground Three).  None of his claims persuade.

To start, the record confirms that trial counsel *did* pursue this general line of

defense at trial, undermining Espinoza's claims that trial counsel was ineffective for

failing to investigate the brightness settings on his phone or attempt to admit such

evidence at trial.  (*See* CR No. 94 at 34-37, 41.)  Under *Strickland*, counsel has a duty "to

make reasonable investigations or to make a reasonable decision that makes particular

investigations unnecessary."  *Strickland*, 466 U.S. at 691.  And the Fifth Circuit holds

that courts must apply "a heavy measure of deference" "in assessing unreasonableness"

of counsel's judgments.  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

"There are no strict rules for counsel's conduct beyond the general requirement of

reasonableness."  *Trottie v. Stephens*, 720 F.3d 231, 242 (5th Cir. 2013) (internal

quotation marks omitted).  Counsel "need not pursue an investigation that would be

fruitless, much less one that might be harmful to the defense."  *Id*. (quoting *Richter*, 562

U.S. at 108); *see also Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (holding that

counsel's "conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it

permeates the entire trial with obvious unfairness" (cleaned up)).  Espinoza has not

demonstrated that any of his counsel's investigative efforts or trial tactics reflected an

unreasonable professional judgment.

10

Here, the record shows that trial counsel cross-examined Officer Rackley on the brightness issue and even attempted to enter a brightened version of Government's Exhibit 20 into evidence. (CR No. 94 at 34-37, 41.) Specifically, trial counsel asked Officer Rackley:

> Q: You don't know what brightness [Espinoza] had his phone on? I mean, you have agreed you don't know what brightness setting he had his phone on. Right?
> A: No, Sir.
> Q: Okay.
> A: But the pictures will come out same brightness as I taking them.
> Q: All right. So—
> A: Doesn't matter what brightness his phone is on.

(CR No. 94 at 41.) This testimony dooms Espinoza's claim, defeating both his deficient performance and prejudice arguments in one fell swoop. First, it shows that trial counsel questioned Officer Rackley about the possibility that Espinoza could have viewed the non-age-regressed photo of herself on a different brightness setting. That the cross examination was unsuccessful does not mean counsel performed deficiently. *See United States v. Cantu-Cantu*, 157 F.3d 903, 1998 WL 611736, at *1 (5th Cir. Aug. 24, 1998) (noting that an argument that counsel's strategic choice was unsuccessful is insufficient to establish deficient performance). Second, the officer's answer shows that, regardless of any brightness settings, it was unlikely that Espinoza could have manipulated the photograph from his phone. Thus, any further questioning or proof on this point was unlikely to change the outcome of trial.

Additionally, Espinoza fails to show that his trial counsel performed deficiently and prejudiced him by not further investigating the brightness capabilities of his phone

11

and by not introducing it into evidence and demonstrating its capabilities to the jury because he presents no evidence whatsoever that his phone actually had the ability to brighten or manipulate a photograph to the point where Government Exhibit 20 would reveal a middle-aged female.  Instead, he presents the Court with only a self-serving and conclusory assertion that his phone possessed that capability.  (*See* CV No. 1 at 9.)  But his unsupported claims are insufficient to overcome Officer Rackley's testimony that the photograph could not be brightened by adjusting the settings on his phone.  (*See* CR No. 94 at 41); *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (establishing that a court cannot consider bald assertions, unsupported by anything in the record, to be of probative evidentiary value); *see also United States v. Stracener,* 959 F.2d 31, 33 (5th Cir. 1992) (applying the *Ross* analysis to determination of a 28 U.S.C. section 2255 motion).

Moreover, even assuming Espinoza's phone had the capability to brighten the photograph that Officer Rackley sent, there is no reason to believe it would have revealed a middle-aged woman.  Officer Rackley's face is completely obstructed in the photo:

12



(GX 20).  In the photo, the phone covers so much of Officer Rackley's face that it is just

not plausible that—even if Espinoza's phone could have brightened the photo— it would

have revealed that the person pictured is not a minor.  The placement of Officer

Rackley's phone in the photo alone defeats Espinoza's claim that "a lightened version of

Government Exhibit 20 show[s] UC's full, unaltered, non-age regressed face."  (CV No.

1 at 9; *see* CR No. 94 at 34 (referring to Government Exhibit 20 as "not age-regressed"

and "not modified in any way" but noting that Officer Rackley "ha[s] the phone over

[her] face, but that's [her] hand").  No matter the brightness of the photo, neither

Espinoza nor the jury could have seen Officer Rackley's "full, unaltered, non-age

regressed face."  (*Cf.* CV No. 1 at 9.)  Espinoza's claim to the contrary is not only

unsupported, it is affirmatively refuted by the record evidence.  (*See* GX 20.)

13

Finally, on this record, Espinoza cannot show that, even if his counsel had further investigated the brightness settings on his phone, entered his actual phone into evidence, or successfully admitted the brightened version of Government Exhibit 20 at trial, that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 at 694.  As demonstrated, the photograph does not clearly depict an adult, and evidence of Espinoza's belief that "Maddi" was a minor and his desire to have sex with her was overwhelming.  The government's proof at trial consisted of dozens of messages between Espinoza and "Maddi" where it was clear that Espinoza believed she was a minor and wanted to have sex with her.  *See Espinoza*, 2025 WL 1905334, at *1 (noting Espinoza's statements that he had "always wondered about girls [Maddi's] age" and had "always wanted a young girl").  The record also contains age-regressed photographs of Officer Rackley posing as "Maddi" that were sent to Espinoza where she appears to be a minor.  (*See* GX 12, 15, 16.)  Indeed, "[t]he evidence indicates that, even after Espinoza learned that Maddi was a minor, he was a willing, ready, and enthusiastic participant in the offense as he continued to talk to her in a sexual manner, suggested that they meet to have sex, and initiated the chats on two separate days." *Espinoza*, 2025 WL 1905334, at *1.  Espinoza cannot show prejudice.

In sum, Espinoza fails to show ineffective assistance in any of his claims regarding the brightness settings on his phone.  The record confirms that Espinoza's trial counsel tested the government's proof by questioning Officer Rackley about the brightness settings on Espinoza's phone and attempting to enter a brightened version of Government

14

Exhibit 20 into evidence.  Espinoza's self-serving claims to the contrary are wholly

conclusory, unsupported by any evidence, and easily defeated by Officer Rackley's

testimony at trial.  And, even if Espinoza could show that he was able to manipulate the

photograph from his phone—which he has failed to do— Officer Rackley's face is

completely obstructed in the photograph, making it impossible to discern her age.

Finally, Espinoza also fails to show prejudice because he does not come close to showing

that, but for his trial counsel's alleged deficiencies, there is a reasonable probability of a

different result.  The court can easily deny these claims.

**2.      Espinoza fails to show ineffective assistance in trial counsel's failure to object to the government's closing argument (Ground Four)**

Espinoza's fourth claim of ineffective assistance relates to his counsel's failure to

object to a portion of the government's closing argument that depicted his photograph

with the words "guilty" superimposed over it.  (CV No. 1 at 13.)  Specifically, he alleges

that his counsel should have objected to that portion of the closing argument, and had

counsel objected, the photographs would have been taken down or the issue would have

been preserved for direct appeal.  (CV No. 1 at 13.)  Espinoza fails to show constitutional

ineffectiveness.

First, Espinoza fails to show that the failure to object amounted to deficient

performance.  It is not uncommon for attorneys to adopt a no-objection strategy during

closing arguments to convey their belief in the strength of their case or to avoid bringing

more attention to a particular topic.  Because "an objection may tend to emphasize a

particular remark to an otherwise oblivious jury, the effect of objection may be more

prejudicial than the original remarks of opposing counsel." *Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970). As such, whether to raise objections is a strategic decision, which this court consistently declines to second guess. *See United States v. Winters*, 530 F. App'x 390, 398 (5th Cir. 2013). Here, Espinoza's counsel's failure to object was not outside the boundary of reasonable assistance.

Second, Espinoza wholly fails to show that the outcome of the trial would have been different had his counsel objected. Even if counsel had objected, and the Court sustained the objection, the Court would undoubtedly have given a curative instruction directing the jury to disregard the photograph. With that type of instruction—and in light of the overwhelming evidence against him at trial—Espinoza cannot show that the jury would have decided differently had his lawyer objected.

Recognizing that he cannot demonstrate trial prejudice, Espinoza makes a last-ditch effort at showing prejudice by claiming that, if his counsel had objected, "the issue would have been preserved for direct appeal." (CV No. 1 at 13.) But nowhere does Espinoza prove or even allege that the issue would have *prevailed* on appeal. This makes sense, given that "[w]hen a district court gives an immediate curative instruction, it cures any alleged harm" from an improper closing argument. *United States v. Murra*, 879 F.3d 669, 685 (5th Cir. 2018) (internal punctuation marks and citation omitted). Thus, Espinoza's assumption that, with an objection, he would have prevailed on appeal is a huge leap that finds no support in the record, especially in light of the overwhelming evidence against him at trial. Because he fails to show both deficient performance and prejudice, Espinoza's claim should be denied.

16

**3.      Espinoza's freestanding actual innocence claim is not cognizable.  (Ground Five)**

In his fifth ground for relief, Espinoza makes the perfunctory claim that he is actually innocent.  (CV No. 1 at 13.)  Because he merely takes issue with the jury's determination—and the Fifth Circuit's affirmance—that he intended to meet a minor for sex, his claims are not cognizable here.

Section 2255 review is limited to questions of constitutional or jurisdictional magnitude.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "The Supreme Court, and courts within the Fifth Circuit 'do not recognize freestanding actual innocence claims.'"  *Freeney v. United States*, No. 3:22-cv-484, 2023 WL 4214935, at *2 (N.D. Tex. May 4, 2023); *In re Raby*, 925 F.3d 749, 755 (5th Cir. 2019); *see also United States v. Fields*, 761 F.3d 443, 479 (5th Cir. 2014) (so recognizing).  Espinoza alleges that he maintains his innocence and that trial counsel "failed to present exculpatory evidence and failed to preserve for appeal."  (CV No. 1 at 13.)  But these conclusory claims—in which Espinoza professes his actual innocence—are not cognizable under Section 2255 and should be denied.  *See Anderson v. United States*, No. 3:17-cr-222, 2024 WL 1776378, at *6 (N.D. Tex. Apr. 23, 2024) (finding a "bare actual innocence claim, as opposed to asserting actual innocence as a gateway to have the Court consider otherwise barred constitutional claims" was not cognizable under Section 2255).

**4.      Espinoza fails to show ineffective assistance of counsel on appeal.  (Ground Six)**

In his final ground for relief, Espinoza summarily faults appellate counsel for failing to raise unspecified issues on appeal.  (CV No. 1 at 13.)  Espinoza's conclusory

allegation fails to show deficient performance, and this record defeats his ability to show prejudice.

The Sixth Amendment does not require that appellate counsel raise every non-frivolous issue for review. *United States v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004). Rather, appellate counsel should present meritorious arguments based on directly controlling precedent. *Id.* So, when assessing appellate counsel's conduct, this Court must "first assess whether counsel failed to raise a nonfrivolous issue that was clearly stronger than the issues raised on appeal." *Moore v. Vannoy*, 968 F.3d 482, 489 (5th Cir. 2020) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Here, Espinoza makes no attempt to even identify what issue his appellate counsel should have raised. Indeed, Espinoza is silent as to what nonfrivolous issue appellate counsel could have raised "that was clearly stronger than the issues raised on appeal."[2] *Id*. Instead, the record confirms that appellate counsel made the reasonable and strategic choice to argue the sufficiency of the evidence to overcome Espinoza's entrapment defense at trial, which was the major defensive theme at trial and well preserved for appellate review. *See Espinoza*, 2025 WL 1905334, at *1. That the issue was not ultimately meritorious does not render appellate counsel's performance deficient. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983). And, by his failure to clearly

---

[2] To the extent Espinoza argues that his appellate counsel was ineffective for not raising the grounds he raises in his Section 2255 motion, (CV No. 1 at 13), for the reasons demonstrated, those claims are meritless and certainly not "clearly stronger than the issues raised on appeal." *See id*. Moreover, given that the Fifth Circuit consistently denies claims of ineffective assistance of counsel on direct appeal without prejudice to defendants raising them in a Section 2255 motion, there is no reason to believe that the Fifth Circuit would have addressed his ineffective-assistance claims on direct appeal even if his appellate counsel had raised them.

identify an alternate meritorious issue for appeal, Espinoza also fails to show prejudice. *See United States v. Rodden*, No. 4:11-CR-034-A, 2013 WL 2933046, at \*3 (N.D. Tex. June 12, 2013) (McBryde, J.), *aff'd on other grounds*, 583 F. App'x 471 (5th Cir. 2014).

In sum, because Espinoza fails to name a single, meritorious argument that counsel failed to raise on appeal, his claim is wholly conclusory and meritless. Therefore, this Court should reject his contention that his appellate counsel provided ineffective assistance.

## CONCLUSION

The motion should be denied.

Respectfully submitted,

Ryan Raybould
United States Attorney

*s/ Lauren C. Murphree*
Lauren C. Murphree
Assistant United States Attorney
Texas Bar No. 24085059
1200 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: (806) 472-7322
Lauren.murphree@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on March 5, 2026, I filed this response with the clerk of court for the U.S. District Court, Northern District of Texas.  I also certify that a copy of this motion was sent to Jose Luis Espinoza, Jr., Register Number 99648-510, Seagoville FCI, P.O. Box 9000, Seagoville, Texas 75159, by first-class mail.

*s/ Lauren C. Murphree*

Lauren C. Murphree
Assistant United States Attorney